UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK SABTI,

       Plaintiff,

v.                                Case No.: 23-cv-12620
                                Hon. Gershwin A. Drain


INTERBLOCK USA a/k/a
INTERBLOCK LUXURY
GAMING PRODUCTS, LLC,

       Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#34] AND DENYING DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S EXPERT DR. STEPHEN BATZER [#44] AND SETTING CERTAIN DATES

### I.    INTRODUCTION

Plaintiff Mark Sabti brings this products liability action against Defendant Interblock USA a/k/a Interblock Luxury Gaming Products, LLC, the manufacturer of a Universal Cabinet Craps machine (the "Universal Cabinet"). Plaintiff asserts the Universal Cabinet contains design defects and that Defendant breached the implied warranty of fitness when the machine's gas springs failed, causing the hood of the machine to fall on Plaintiff's back causing injury. Now before the Court is the Defendant's Motion to Strike Plaintiff's Expert Dr. Stephen Batzer and

Defendant's Motion for Summary Judgment.  The motions are fully briefed; and upon review of the parties' filings, the Court finds that oral argument will not aid in the disposition of these matters.  Accordingly, the Court will resolve the present motions on the briefs.  *See* E.D. Mich. L.R. 7.1(f)(2).

## II.    FACTUAL BACKGROUND

Plaintiff was employed at Greektown Casino since 2001.  In August of 2022, Plaintiff was working as a Slot Technician.  As a Slot Technician, Plaintiff's job duties were to diagnose, repair and move slot machines from position to position.

Defendant designs and manufactures an electronic craps machine called a Universal Cabinet, which is used at Greektown Casino.  The Universal Cabinet contains gas springs which are used to raise and lower the hood of the machine. The gas springs have compressed gas inside of them.  Defendant maintains that compressed gas springs are common in the gaming industry and are used by other manufacturers such as IDT, American Gaming, Aristocrat, and Lights and Wonder.

When working properly, the hood of the machine automatically raises. When the gas springs are not working, the hood only raises approximately ¼ inch before needing to be manually raised.  The lower door is removed simply by pressing two tabs and removing the door.

Greektown Casino leases the Universal Cabinet from Defendant.  Plaintiff's supervisor, Sean Matson, testified that Slot Technicians perform minimal repairs

on Interblock machines.  Greektown maintains a "down game list."  If the game on the list is a game that Greektown employees are not permitted to fix, a service call to the manufacturer is placed for the manufacturer to fix the machine.  The down game list is compiled by slot technicians or leadership who initially hand write the list before it is transferred to an electronic format.  Technicians are provided a copy of the list at the beginning of their shifts.

Each machine has a logbook inside the machine which identifies the date, time, and individual who accessed the machine and reason why the machine is accessed.  The logbook for the Universal Cabinet can be reached using only the lower door of the machine.

On August 17, 2022, a service ticket was opened for the Universal Cabinet machine.  Darryl Joshua, Assistant Slot Tech Manager, was responsible for providing Plaintiff with the down game list prior to the start of his shift.  The down game list identified the Interblock machine with the reason it was out of service as "No Dice movement-Door Shocks bad."  ECF No. 34, PageID.181.  At his deposition, Joshua could not recall whether the Plaintiff saw the down game list prior to the incident giving rise to this action.

Another Slot Technician, James Thiellesen, accessed the game on August 17, 2022 and when he held the hood open, he felt the pressure of the hood coming down.  He recalls placing a screwdriver in between the door and the game so that

he could open the bottom door so he could reboot the game.  Mr. Thiellesen recalls the issue of the door's gas springs being discussed during team huddles before the shift began.  Mr. Thiellesen testified that it is obvious to him as a technician when the door's gas springs are not working because the door is significantly heavier when the gas springs are not functioning properly. Mr. Thiellesen also testified that other gaming machine manufacturers utilize self-locking gas springs which would prevent the uncontrolled descent of the hood of a gaming machine.  Matson also testified that both Aristocrat and Light & Wonder gaming machines use prop rods or hinges that hold the hood in place so that it does not come down uncontrollably.

On August 18, 2022, Plaintiff testified that he received the down game list at the beginning of his shift.  Plaintiff then went to the Universal Cabinet to determine what was wrong with it.  He wanted to get the logbook out of the machine to figure out if something had been noted about a prior issue. Plaintiff opened the hood of the machine with his right hand.  Plaintiff then placed his head underneath the hood while continuing to hold it with his right hand.  Plaintiff then let go of the hood and the door fell uncontrollably on his back. Plaintiff assumed that the gas springs would hold the hood in place when he raised it sufficiently.

Defendant's employee, Emilian Kek, who designed the Universal Cabinet, testified that the gas springs are supposed to control the descent of the hood.  He admitted the Universal Cabinet malfunctioned.  Defendant's Field Technician,

4

Marc Matthews, acknowledged that the gas springs have a finite useful life and that they can lose their effectiveness over time.  Mr. Matthews admitted that the gas springs can fail in a matter of months, stating, "you just don't know when they could fail."

One of Defendant's employees removed the failed gas springs and installed new gas springs.  The old gas springs were disposed of, and Plaintiff has never had an opportunity to inspect the old gas springs.

Plaintiff retained the services of Dr. Stephen Batzer, a licensed engineer, with specialization in forensic engineering and failure analysis.  By the time Dr. Batzer was able to examine Defendant's Universal Cabinet, Defendant's employees had already removed the gas springs and threw them away.  Dr. Batzer prepared a Rule 26 Report opining that Defendant should have utilized a prop rod or self-locking gas springs, which are used on other gaming machines to hold the hood in place in its elevated position.

## III.    LAW & ANALYSIS

### A.  Defendant's Motion to Strike Plaintiff's Expert Stephen Batzer

A party offering an expert's opinion bears the burden of establishing the admissibility of such opinion by a preponderance of the evidence.  *Nelson v. Tennessee Gas Pipeline Co.,* 243 F.3d 344, 251 (6th Cir. 2001).  Expert testimony

is admissible only if it satisfies the requirements of Rule 702 of the Federal Rules

of Evidence, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b)   the testimony is based on sufficient facts or data;
> (c)   the testimony is the product of reliable principles and methods; and
> (d)   the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The district court must determine whether the expert's testimony

meets three requirements: (1) the expert witness must be qualified by "knowledge,

skill, experience, training or education," (2) the proffered testimony is relevant and

"will assist the trier of fact to understand the evidence or to determine a fact in

issue," and (3) the testimony is reliable in that it is based on scientific, technical or

other specialized knowledge.   Fed. R. Evid. 702; *In re Scrap Metal Antitrust*

*Litigation*, 527 F.3d 517, 529 (6th Cir. 2008).

As to Dr. Batzer's qualifications, the Court notes that he has a Ph.D. in

Mechanical Engineering.  He is a board-certified forensic engineer and has worked

as a forensic engineer.  He holds three safety patents and is a member of the

American Society of Mechanical Engineers and the Society of Automotive

Engineers.  Dr. Batzer's education, knowledge and experience render him qualified to serve as an expert in this products liability case.

Dr. Batzer is expected to testify, consistent with his report, that Defendant was negligent in its design of the subject machine and that the subject machine is not fit for its intended use.  Dr. Batzer has identified alternative means that should have been utilized by the Defendant to prevent uncontrolled descent of the hood of the machine after it had been opened.  Specifically, as indicated in Dr. Batzer's report, Defendant should have utilized a prop rod or a self-locking gas spring used on other gaming machines to hold the hood in place in its elevated position.  In reaching his conclusion, Dr. Batzer relied on the testimony of fellow slot technician James Thiellesen, who testified that other gaming machine manufacturers utilize self-locking gas spring which would prevent the uncontrolled descent of the hood.  Additionally, Sean Matson, Slot Technician Manager at Greektown Casino, also testified that both Aristocrat and Light & Wonder gaming machines use prop rods or hinges that hold the hood in place so that it does not come down uncontrollably.

The Court rejects Defendant's argument that Dr. Batzer is not qualified because he has no experience working on casino gaming machines. Dr. Batzer has been an engineer for thirty-five years, has three safety patents, and has specialized in forensic engineering and safety analysis for twenty years.  His familiarity with

gaming machines is not a basis to wholesale exclude his testimony. Rather, this fact goes to the weight to be accorded Dr. Batzer's testimony. *See First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 333 (6th Cir. 2001) ("[T]o the extent that [the expert] may have lacked familiarity with some aspects of banking relationships, the district court correctly reasoned that such unfamiliarity merely affected the weight and credibility of his testimony, not its admissibility.").

Nor is the Court persuaded that Dr. Batzer's opinion is unreliable because he did not perform any scientific analysis or testing. These issues also go to the weight to be accorded Dr. Batzer's testimony, not to its admissibility. Based on the foregoing considerations, the Court denies Defendant's request to strike Dr. Batzer.

### B. Defendant's Motion for Summary Judgment[1]

#### 1. Standard of Review

Federal Rule of Civil Procedure 56(a) empowers the court to render summary judgment forthwith "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

---

[1] The Court notes that in his Response to the Defendant's Motion for Summary Judgment, Plaintiff not only argues that the motion for summary judgment should be denied, but also argues that summary judgment should be granted in favor of Plaintiff on the issue of liability. Plaintiff's request for summary judgment in his response brief is improper. *See* E.D. Mich. Elec. Filing Policies and Procedures, R.5(f)("A counter-motion must not be combined with a response or reply."). Similarly, to the extent the Plaintiff seeks an adverse inference instruction, Plaintiff shall file a separate motion seeking such relief.

entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp*., 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co*., 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc*., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

## 2. Negligent Design Theory

Manufacturers have a duty to design their products "to eliminate any unreasonable risk of foreseeable injury." *Ghrist v. Chrysler Corp.*, 451 Mich. 242, 248, 547 N.W.2d 272 (1996) (quotation marks and citation omitted). A negligent design claim "questions whether the design chosen renders the product defective, i.e., whether a risk-utility analysis favored an available safer alternative." *Gregory v. Cincinnati, Inc.*, 450 Mich. 1, 11, 538 N.W.2d 325 (1995). This risk-utility analysis "considers alternative safer designs and the accompanying risk compared against the risk and utility of the design chosen 'to determine whether . . . the manufacturer exercised reasonable care in making the design choices it made.'"

*Id.* at 13 (footnote and citation omitted).  Such an inquiry requires the plaintiff to prove (1) that the product was not reasonably safe for its foreseeable uses when it left the control of the manufacturer; and (2) a feasible, alternative design was available that would have prevented the harm without significantly impairing the usefulness or desirability of the product to its users.  MICH. COMP. LAWS § 600.2946(2); *see also Ghrist*, 451 Mich. at 249.

In this case, Marc Matthews acknowledged that the gas springs have a finite useful life and that they can lose their effectiveness over time.  Mr. Matthews admitted that the gas springs can fail in a matter of months, stating, "you just don't know when they could fail."  Thus, it was foreseeable that the gas springs could fail.  The record further contains evidence from Dr. Batzer that Defendant could have used self-locking gas springs in the Universal Cabinet, which would have prevented the harm suffered by the Plaintiff.   As such, Defendant knew that the gas springs in the Universal Cabinet could fail at any time and yet it took no measures to assure, by way of self-locking gas springs or a prop rod, that the hood of the machine would not descend in an uncontrollable manner.

Based on the foregoing considerations, Plaintiff has advanced sufficient evidence to demonstrate a material question of fact exists on Plaintiff's negligent design claim and Defendant is not entitled to summary judgment on this claim.

### 3.   Breach of Implied Warranty

"When a products liability action is premised on a breach of implied warranty of fitness, the plaintiff must prove that a defect existed at the time the product left the Defendant's control, which is normally framed in terms of whether the product was 'reasonably fit for its intended, anticipated or reasonably foreseeable use.'" *Bouverette v. Westinghouse Electric Corp.*, 245 Mich. App. 391, 396; 628 N.W.2d 86 (2001) (quoting *Gregory v. Cincinnati, Inc*., 450 Mich. 1, 34; 538 N.W.2d 325 (1995)).

Here, there is no dispute that the machine malfunctioned.  Additionally, Marc Matthews agreed that if the gas springs had been working properly, the hood would not have fallen down in an uncontrolled fashion.  He also testified that the gas springs experienced wear and tear and are designed to be replaced.  Matthews indicated that there is no definitive lifespan for functioning gas springs.  He asserted that there are gas springs that only last a few months.  As such, there is evidence to support Plaintiff's claim that the Universal Cabinet was defective when it left Defendant's control.  Despite this knowledge, Defendant failed to utilize protective safety measures such as self-locking gas springs or a prop rod in the Universal Cabinet to prevent uncontrolled descent of the hood.  Based on these considerations, Defendant is also not entitled to summary judgment on Plaintiff's breach of implied warranty of fitness claim.

## IV.   CONCLUSION

Accordingly, for the reasons articulated above, Defendant's Motion for Summary Judgment [#34] is DENIED.

Defendant's Motion to Strike Plaintiff's Expert Dr. Stephen Batzer [#44] is DENIED.

The following dates shall govern in this matter:

| | |
|---|---|
| Settlement conference before Magistrate Judge Kimberly G. Altman: | Late May/Early June of 2025 |
| Motions *in Limine* due: | June 3, 2025 |
| Final Pretrial Order due: | June 3, 2025 |
| Final Pretrial Conference: | June 10, 2025 at 2:00 p.m. |
| Trial: | July 15, 2025 at 9:00 a.m. |

SO ORDERED.

Dated:  May 15, 2025                                    /s/Gershwin A. Drain
                                                               GERSHWIN A. DRAIN
                                                               United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 15, 2025, by electronic and/or ordinary mail.
<u>/s/ Marlena Williams</u>
Case Manager